**PORTER, Price Adm'r, v. MILLER et al.**

No. 164.

Circuit Court of Appeals, Second Circuit.

April 23, 1946.

Before L. HAND, SWAN and FRANK, Circuit Judges.

Nathan B. Fogelson, and Cohen & Wedeen, all of New York City, for appellants.

A. M. Dreyer, and George Moncharsh, Deputy Adm'r for Enforcement, Milton Klein, Director Litigation Div., David London, Chief, Appellate Branch, and Arthur G. Silverman, Sp. Appellate Atty., OPA, all of Washington, D. C., and Kenneth V. Fisher, Regional Litigation Atty., OPA, of New York City, for appellee.

L. HAND, Circuit Judge.

The Price Administrator sued the defendants to recover treble damages under § 205(a) and (e) of the Emergency Price Control Act,—50 U.S.C.A.Appendix § 925 (a) and (e)—for selling goods above the "ceiling" prices, fixed by the General Maximum Price Regulation; but the parties have stipulated that the recovery shall be limited to the difference between the actual prices received and the lawful price. There is no dispute as to the facts, the substance of which is as follows. Before March, 1943, the defendants had been in the habit of buying finished "interlinings" from the Edwards Manufacturing Company and selling at prices fixed by the General Maximum Price Regulation; these goods are a rough cotton fabric, whose surface has been "napped" to make it look like flannel. In that month the Edwards Com-

pany announced that it would no longer sell such goods; but that, instead, it would sell the rough fabric at a price, billing, but not delivering, it to the defendants as such; and that it would then "nap" the surface at a price and separately bill the defendants for that service, which is called "converting." This the Edwards Company did, and the defendants argue that it was lawful for them to sell the "interlinings" so purchased and so "converted," as "Finished Cottons" under No. 127 of the regulations of the O.P.A. The plaintiff on the other hand insists that the General Maximum Price Regulation controlled as before; he does not seek to impose Regulation No. 118 which regulates "Cotton Products," although it sets a lower ceiling than the General Maximum Price Regulation. Indeed, even though No. 118 were the proper regulation, the stipulation on which the case was tried, would leave us no choice except between No. 127 and the General Maximum Price Regulation. The judge found that the plaintiff was right as between these two, and that the General Maximum Price Regulation controlled.

We start with the fact that the "interlinings" were "finished piece goods"; hence, if there were no other regulation, they would fall within No. 127, which covers such goods generally. However, 1400.-78(c) (32) of No. 127 excludes from "Finished Piece Goods" "any fabric covered by Maximum Price Regulation No. 118. Cotton Products." The "interlinings" are concededly cotton products; and, indeed, 1400.115(5) (iii) of No. 118 expressly includes them. It therefore follows that No. 118 sets the "ceiling" for them, unless there is something in that regulation to the contrary. There is nothing unless it be 1400.-115(5) (ii) of No. 118, which excepts from No. 118 all products "which are subject to maximum prices established and in effect under any other Maximum Price Regulation" except the General Maximum Price Regulation. If the "interlinings," as "finished piece goods," are to be considered as covered by No. 127, and if for that reason 1400.115(5) (ii) excepts them from No. 118, there emerges a circuity of reasoning, like the "Renvoi" in conflict of

laws. In that event, as soon as the "interlinings" resume their place in No. 127 as "finished piece goods," 1400.78(c) (32) of No. 127 again excepts them as "Cotton Products," and we are back again where we started, embarked upon an infinite regress which makes nonsense. It seems to us that the escape is fairly plain: i. e., that 1400.115(ii) of No. 118 is to be read as meaning some regulation addressed specifically to some of the products covered by No. 118: i. e., to "Cotton Products," eo nomine. "Finished Piece Goods" is a category of the most general character, meant to apply regardless of the raw material used. When it excepted "Cotton Products" it exscinded a species whose differentia was raw material; when 1400.115(5) (ii) of No. 118 in its turn exscinded goods which any other regulation covered, it created a species of "Cotton Goods": a subspecies. It would be most unnatural to assume that the second exception—that is, the exception to the first exception—should restore its contents to the genus, "Finished Piece Goods," even though it must be owned that no logical solecism would be involved.

A quite separate argument might be made as follows. There is another provision in No. 118—1400.104(a) (1)—which excepts "sales and deliveries of cotton products in the performance of a recognized distributive function by any wholesaler, jobber or retailer, not * * * controlled by * * * the producer"; and "producer" includes a "converter." Before March, 1943: i. e., while the defendants were getting completely finished "interlinings" from the Edwards Company, they were selling as a "jobber," and they might then have argued that 1400.104(a) (1) of No. 118 excluded their sales, which fell within No. 127. However, that was, apparently, not their position, perhaps because they thought that 1400.78(c) (32) of No. 127, in excluding "fabrics covered by" No. 118, excluded all sales of cotton fabrics of whatever kind, including sales by "jobbers" under 1400.104(a) (1) of No. 118. Indeed, we are disposed so to read 1400.78(c) (32) of No. 127: i. e., as putting the defendants' sales within the Gen-

**90**

eral Maximum Price Regulation before March, 1943, just as they and indeed the Administrator seem to have agreed.

But if we were to take the contrary view, and hold that before March, 1943, the defendants' sales were under No. 127, certainly after that date the sales were no longer within that regulation, if the defendants are now right in asserting that it made a difference when the Edwards Company sold them the rough goods as one transaction, and "napped" the goods as a separate transaction. If these two transactions are to be so separated, the defendants' position became worse after March, 1943, than it had been before, because they certainly became "converters," which cut from under them any support from 1400.104 (a) (1) of No. 118. This is true because 1400.104(a) (1) of No. 118 covers only those "jobbers," who are not "controlled," or "controlling," producers, and it certainly does not cover such "jobbers" as are themselves "producers" as well as "jobbers." True, if they are right in dividing their transactions with the Edwards Company into two separate parts, and if also 1400.78 (c) (2) of No. 127 does not exclude all cotton fabrics, however sold, they should be within No. 118; but, as we have said, that question is not before us. All we need now decide is that, taking as true the defendants' position that their dealings with the Edwards Company after March, 1943, should be treated as two separate transactions, they cannot fall within No. 127.

In what we have said, we have not taken into account the Administrator's "Statement of Considerations." We do not decide whether these could have been applied retroactively, if, except for them, the defendants would have been within No. 127. They appear to be an effort to make the regulations establish "ceilings," based upon what was the custom in the greater part of the industry, and not based upon the actual transaction. Assuming that that would be valid prospectively; a question might arise whether they could be made to apply retroactively. It is that question which we mean to leave open. Addison v. Holly Hill Company, 322 U.S. 607, 639–642, 64 S.Ct. 1215, 88 L.Ed. 1488, 153 A.L.R. 1007.

Judgment affirmed.